478

155 P.3d 661

**In the Interest of C CHILDREN, T.C. and A.C.**

No. 27560.

Intermediate Court of Appeals of Hawai'i.

Feb. 8, 2007.

Hayden Aluli, on the briefs, Honolulu, for Mother–Appellant.

BURNS, C.J., FOLEY and NAKAMURA, JJ.

Opinion of the Court by BURNS, C.J.

In this Child Protective Act case, the mother (Mother) of T.C. and A.C. (the children) appeals from (1) the August 16, 2005 Order Awarding Attorney's Fees and Costs (August 16, 2005 Order) that ordered Mother to pay to counsel for the father (Father) of the children $1,185 for fees and $5 for costs within 20 days, and (2) the October 3, 2005 Order Awarding Attorney's Fees and Costs (October 3, 2005 Order) that ordered Mother to pay to counsel for Father $2,415 for fees and $14.75 for costs. Both orders were entered in the Family Court of the First Circuit.[1] We reverse these orders.

## BACKGROUND

T.C. was born on June 14, 1998. A.C. was born on April 8, 2002. On January 10, 2005, the children were taken into police protective custody, released to the State of Hawai'i Department of Human Services (DHS), and placed in a DHS non-relative foster home.

On January 13, 2005, DHS filed a petition seeking temporary foster custody of the children. On January 18, 2005, after a court hearing, the court entered Orders Concerning Child Protective Act that stated in part:

> Based upon the record and/or the evidence presented, the Court finds that:
>
> . . . .
>
> F   Father knowingly and voluntarily stipulated to jurisdiction, adjudication of the petition, foster custody and the service plan dated 12/11/04, however if the child [sic] is placed with maternal grandmother, [F]ather would contest.
>
> G   Mother contested the petition and requested a trial; Mother wants the children placed with maternal grandmother, but is agreeable to placement with Maternal Aunt. However, Mother is agreeable to do service.

In a Settlement/Pretrial Statement filed January 26, 2005, DHS stated:

---

1.  Judge Marilyn Carlsmith presided.

III. *CONCISE SUMMARY OF DHS POSITION:* ... Temporary foster custody was assumed when the children were left without a legal caretaker upon Father's arrest on a warrant immediately after he was awarded custody of the children by the presiding judge in parents' mutual TRO [temporary restraining order] cases. Prior reports to DHS, and changes in Mother's appearance and functioning in recent months suggesting drug use, were corroborated by Mother's recent positive drug screen. Mother appears to be in denial of her need for drug treatment and concerned about jeopardizing her employment as a school counselor. Father is undergoing chemotherapy for colon cancer and has stipulated to jurisdiction, foster custody of the children, and the service plan.

. . . .

VIII. *SETTLEMENT.*

A. Attempts: The parties have settled with Father. If Mother will agree that the DHS report provides an adequate basis to sustain the petition in that the children have been harmed or are subject to threatened harm by the acts or omissions of their family, and if she agrees to foster custody and the service plan, the case can settle.

In a Pretrial Statement filed on February 4, 2005, Mother stated:

III. *CONCISE SUMMARY OF MOTHER'S POSITION:* Mother has not stipulated to jurisdiction because she believes that the [DHS] failed to conduct an adequate investigation before intervening into these matters. Mother has agreed to the service plan as proposed and believes that family supervision is an appropriate resolution, not foster custody. Mother needs assistance extricating herself from a very dis-functional [sic] relationship with [Father] so that she can provide a safe home for her children.

On May 2, 2005, after a court hearing on April 22, 2005, the court entered Orders Concerning Child Protective Act stating in part:

Based upon the record and/or the evidence presented, the Court finds that:

. . . .

C Prior to the hearing, it was disclosed that officers were waiting to arrest Father on felony warrants and therefore DHS will be assuming temporary foster custody of the children later today. DHS stated that even though Father might post bond, the children will be taken into DHS custody, further, DHS intends to place them in a general licensed foster home rather than with maternal grandmother as requested by Mother. Trial was therefore held on the issue of temporary foster custody and choice of foster home. At the conclusion of the trial, Mother stated she would rather have the children remain with Father than in a non-relative foster home.

After trial, the court finds as follows:

D Neither Father nor Mother are presently able to provide a safe family home for the children even with the assistance of a service plan. . . .

E It is not an abuse of discretion for DHS to assume temporary foster custody of the children under the circumstances.

. . . .

G Maternal grandmother is not an appropriate placement for the children at this time even if Mother moved out of her home.

. . . .

THEREFORE, IT IS HEREBY ORDERED THAT:

. . . .

2 DHS is awarded temporary foster custody of the children[.]

At the conclusion of a full day of trial on May 17, 2005, the following was stated:

[COUNSEL FOR DHS]: Your Honor, [S]tate submits that the material elements of jurisdiction adjudicated in the petition have been satisfied. [Mother] ... made them in her testimony. I should probably think about asking for fees from [counsel for Mother] because we've gone through over and over is there a dispute about harm or threatened harm, ... or is it a matter of family supervision. And here we

are. We've been here all day for the ... purpose, apparently, of taking shots at the [DHS], who [sic] has obviously done its best for months to deal with parents who need domestic violence treatment.

. . . .

[COUNSEL FOR FATHER]: Well, Your Honor, I—I would agree with [Counsel for DHS] with regards to a request for attorney's fees for—I think it's pretty clear that the court had jurisdiction from the outset, and I think that we've kind of all had to sit here, sort of, for lack of a better term, wasting our time on this jurisdictional challenge. And my client in the meantime has had all kinds of other financial issues to be dealt with—concerning the other cases that are going on. And, you know, he's here today. He agreed. He stipulated to jurisdiction, and we've gone through this whole trial for an entire day. And there's an entire day of attorney's fees here that my client is going to have to come up with, and we don't really think that that's fair based on the fact that it really has been fairly clear from the beginning that the court had jurisdiction, regardless of whether they specifically found something with [Mother]. It appears that—it appears that the contention was really more about placement, but this was a jurisdictional trial and not about placement.

. . . .

[COUNSEL FOR MOTHER]: You know, Your Honor, I've done a caselaw research, and the ... appellate court has held that where a party agrees to jurisdiction, he or she cannot make certain objections with respect to relevant evidence. And I can point that out to the Court.

... And to have a chilling effect on a party litigant to seek what is his or her right to have ... a court hearing with respect to jurisdiction, it would cause [indiscernible] chilling effect on any litigant. And we did challenge jurisdiction, and we had a trial on that issue. But, the Court heard a lot more than we would have had we said we stipulate to jurisdiction.

... And what the Court has been able to see through all of this is this is an issue—

[Mother] is a mother. She may not be the perfect mother, but she's perfectly able, capable of providing a safe home but for one reason, Judge. She has a very difficult time picking her men properly....

But, what I've seen from the very beginning, Your Honor, is ... I think the [DHS], in particular, ... and ..., have not exercised good-faith efforts to reunite [Mother] with her kids from the very beginning....

. . . .

[COUNSEL FOR MOTHER]: ... I just want to make one last argument, Judge, and that is given—given the review hearing, we agree, basically, to family supervision, Judge. That (indiscernible) would be a likely outcome, and we demonstrated that. [Mother] is open for that.

Immediately after the trial, the court entered Orders Concerning Child Protective Act that stated in part:

THEREFORE, IT IS HEREBY ORDERED THAT:

. . . .

2 DHS is awarded foster custody over the children;

3 The service plan dated January 11, 2005 ... is ordered by the Court and attached as Exhibit "A" and made a part of this order;

. . . .

10 The Court orders 1/2 day's fees for [counsel for Father] and affidavits shall be submitted. The parties can submit memoranda.

On May 27, 2005, counsel for Father filed an affidavit seeking $1,190 (one-half of $2,370 for attorney fees, computed at $150 per hour, plus one-half of $10 for costs). The August 16, 2005 Order followed.

On September 2, 2005, Mother filed a motion for reconsideration of the August 16, 2005 Order. In this motion, Mother asserted that

it appears that the only basis for an award of attorney's fees and costs in a Child Protective Act proceeding is Rule 68, Hawai'i Rules of Family Court.... Moreover, the Order violates public policy because it

would have a chilling effect on the rights of all respondent parents in Hawai'i whose children are subject to child protective contested case hearings.

On September 20, 2005, after a hearing, the court entered an order denying the motion for reconsideration and granting a request, by counsel for Father, for attorney fees incurred in defending against the motion. On September 29, 2005, counsel for Father filed an affidavit seeking $2,415 for attorney fees and $14.75 for costs. The October 3, 2005 Order followed.

On October 20, 2005, Mother filed a notice of appeal from the September 20, 2005 order denying the motion for reconsideration. On October 21, 2005, at 10:26 A.M., the court entered findings of fact and conclusions of law in support of the October 3, 2005 Order which state in part:

### FINDINGS OF FACT

. . . .

2. The Court granted Father's oral motion for Attorney's Fees and Costs following Mother's one-day jurisdictional trial held on May 17, 2005 over the objection of Mother's counsel who requested the Motion be in writing and that a basis for the award be provided. The Court ordered an award of one-half day's attorney fees and costs based upon it's finding that the trial should have been a one-half day placement trial, rather than a one-day jurisdictional trial.

2. Hawaii Revised Statutes (HRS) § 603.21.9 (1993) states as follows:

**Powers.** The several circuit courts shall have power:
(1) To make and issue all orders and writs necessary or appropriate in aid of their original or appellate jurisdiction;
(2) To administer oaths;
(3) To compel the attendance of parties and witnesses from any part of the State, and compel the production of books, papers, documents or tangible things;
(4) To admit to bail persons rightfully confined in all bailable cases, or to dispense with bail as provided by the State Constitution;
(5) To issue warrants for the apprehension, in any part of the State, of any person accused under oath of a crime or misdemeanor committed in any part of the State and to examine and commit the person to prison accord-

3. Mother stipulated to the DHS service plan but objected to jurisdiction.

4. Mother's stipulation to the DHS service plan was in effect also a stipulation to jurisdiction, therefore the May 17, 2005 trial should have been a one-half day placement trial, rather than a one-day jurisdictional trial.

5. Mother's pursuit of a one-day jurisdictional trial after having stipulated to the DHS service plan was clearly not made in good faith and was a waste of the Court's time as well as that of the other parties involved.

. . . .

10. Father stipulated to the Court's jurisdiction herein and further stipulated to the DHS service plan.

### CONCLUSIONS OF LAW

. . . .

3. Mother's Motion is Meritless

. . . .

A. . . . .

The Court has the inherent power under [Hawaii Revised Statutes (HRS)] § 603–21.9 (1993)[2] to issue sanctions for attorney's fees and costs upon a finding of bad faith. [*Kukui Nuts of Hawaii, Inc. v. R. Baird & Co., Inc.*, 726 P.2d 268, 6 Haw.App. 431 (Hawai'i App.1986).] In [*State of Hawaii v. Gene Harrison*, 95 Hawai'i 28,] 18 P.3d 890 (2001) the Court stated:[3]

ing to law, for trial before the circuit court of the circuit in which the offense was committed, to fix bail and generally to perform the duties of a committing magistrate;
(6) To make and award such judgments, decrees, orders, and mandates, issue such executions and other processes, and do such other acts and take such other steps as may be necessary to carry into full effect the powers which are or shall be given to them by law or for the promotion of justice in matters pending before them.

In this Child Protective Act case on appeal, the court was not a circuit court, but it was a district family court.

3. Immediately following this quote the Hawai'i Supreme Court stated:

*Kawamata Farms, Inc. v. United Agri Products*, 86 Hawai'i 214, 242, 948 P.2d 1055, 1083

*E. [This] Court's Inherent Power*

*We have previously recognized that courts have inherent equity, supervisory, and administrative powers as well as inherent power to control the litigation process before them. Inherent powers of the court are derived from the state Constitution and are not confined by or dependent on statute. Among courts' inherent powers are the powers to create a remedy for a wrong even in the absence of specific statutory remedies, and to prevent unfair results. The courts also have inherent power to curb abuses and promote a fair process which extends to the preclusion of evidence and may include dismissal in severe circumstances. It follows that if the trial court has the inherent power to level the ultimate sanction of dismissal, it necessarily has the power to take all reasonable steps short of dismissal, depending on the equities of the case.* (internal citations omitted)

. . . .

... Mother's insistence on continuing with a full-day jurisdictional trial, especially in light of the evidence already before

(1997) (quoting *Richardson v. Sport Shinko (Waikiki Corp.)*, 76 Hawai'i 494, 507, 880 P.2d 169, 182 (1994) (citations, internal quotation marks, original brackets, and footnote omitted)). Therefore, although the language and legislative history of HRS § 802–5 do not authorize compensation for services rendered in a petition for writ of certiorari to the United States Supreme Court, this court has the inherent power to compensate attorneys for such services if there is a constitutional need to provide appointed counsel for such petitions.

4.  HRS § 571–11 (1993 and Supp.2005) states in part:
    **Jurisdiction; children.** Except as otherwise provided in this chapter, the court shall have exclusive original jurisdiction in proceedings:
    . . . .
    (9) For the protection of any child under chapter 587.

5.  Until June 30, 2006, HRS § 571–54 stated:
    **Appeal.** ... An interested party aggrieved by any order or decree of the court may appeal to the supreme court for review of questions of law and fact upon the same terms and conditions as in other cases in the circuit court and review shall be governed by chapter 602, except as hereinafter provided. Where the de-

the court and Mother's stipulation to the DHS service plan at that time was *vexatious in nature, not pursued in good faith and her defenses were frivolous.*

(Footnotes added; italics in original.)

On October 21, 2005, at 3:02 P.M., Mother filed a motion for reconsideration of the October 3, 2005 Order. On October 28, 2005, after a hearing, the court entered an order denying that motion for reconsideration.

On November 16, 2005, Mother filed a notice of appeal. On December 2 and 6, 2005, the court entered findings of fact and conclusions of law in support of the October 28, 2005 order denying the October 21, 2005 motion for reconsideration.

## DISCUSSION

### I.

We conclude that the August 16, 2005 and October 3, 2005 orders assessing attorney fees and costs were orders entered in a proceeding based upon HRS § 571–11(9) (1993 and Supp.2005)[4] that fell within the ambit of HRS § 571–54 (1993 and Supp. 2005)[5] and were expressly excluded by Ha-

cree or order affects the custody of a child or minor the appeal shall be heard at the earliest practicable time. In cases under section 571–11 the record on appeal shall be given a fictitious title, to safeguard against publication of the names of the children or minors involved.
. . . .
An order or decree entered in a proceeding based upon section 571–11(1), (2), (6), or (9) shall be subject to appeal to the supreme court only as follows:
Within twenty days from the date of the entry of any such order or decree, any party directly affected thereby may file a motion for a reconsideration of the facts involved. The motion and any supporting affidavit shall set forth the grounds on which a reconsideration is requested and shall be sworn to by the movant or the movant's representative. The judge shall hold a hearing on the motion, affording to all parties concerned the full right of representation by counsel and presentation of relevant evidence. The findings of the judge upon the hearing of the motion and the judge's determination and disposition of the case thereafter, and any decision, judgment, order, or decree affecting the child and entered as a result of the hearing on the motion shall be set forth in writing and signed by the judge. Any

wai'i Family Court Rules (HFCR) Rule 59(e) (Supp.2005)[6] from its ambit. We further conclude that the time requirements of HRS § 571–54 were satisfied and, therefore, we have appellate jurisdiction.

## II.

In Hawai'i, family courts were created and are governed by HRS Chapter 571 (Supp. 2005). As noted in fn. 4 above, HRS § 571–11(9) specifies that the family court has exclusive original jurisdiction in proceedings for

the protection of any child under chapter 587. In this case, the family court labeled the issues as (a) jurisdiction and (b) placement.

Mother contends that "the family court erred because besides its inherent powers and [HFCR Rules 11 and 68], there appears to be no other statute, rule, or precedent that provides for the award of attorney's fees and costs to a non-prevailing party in a Child Protective Act contested case hearing." HFCR Rule 11[7] pertains to signing of plead-

> party deeming oneself aggrieved by any such findings, judgment, order, or decree shall have the right to appeal therefrom to the supreme court upon the same terms and conditions as in other cases in the circuit court and review shall be governed by chapter 602; provided that no such motion for reconsideration shall operate as a stay of any such findings, judgment, order, or decree unless the judge of the family court so orders; provided further that no informality or technical irregularity in the proceedings prior to the hearing on the motion for reconsideration shall constitute grounds for the reversal of any such findings, judgment, order, or decree by the appellate court.
>
> Beginning July 1, 2006, HRS § 571–54 states:
>
> **§ 571–54 Appeal.** An interested party, aggrieved by any order or decree of the court, may appeal to the intermediate appellate court for review of questions of law and fact upon the same terms and conditions as in other cases in the circuit court, and review shall be governed by chapter 602, except as hereinafter provided. Where the decree or order affects the custody of a child or minor, the appeal shall be heard at the earliest practicable time. In cases under section 571–11, the record on appeal shall be given a fictitious title, to safeguard against publication of the names of the children or minors involved.
>
> . . . .
>
> An order or decree entered in a proceeding based upon section 571–11(1), (2), (6), or (9) shall be subject to appeal only as follows:
>
> Within twenty days from the date of the entry of any such order or decree, any party directly affected thereby may file a motion for a reconsideration of the facts involved. The motion and any supporting affidavit shall set forth the grounds on which a reconsideration is requested and shall be sworn to by the movant or the movant's representative. The judge shall hold a hearing on the motion, affording to all parties concerned the full right of representation by counsel and presentation of relevant evidence. The findings of the judge upon the hearing of the motion and the judge's determination and disposition of the case thereafter, and any decision, judgment, order, or decree affecting the child and entered as a

> result of the hearing on the motion, shall be set forth in writing and signed by the judge. Any party aggrieved by any such findings, judgment, order, or decree shall have the right to appeal therefrom to the intermediate appellate court, upon the same terms and conditions as in other cases in the circuit court, and review shall be governed by chapter 602; provided that no such motion for reconsideration shall operate as a stay of any such findings, judgment, order, or decree unless the judge of the family court so orders; provided further that no informality or technical irregularity in the proceedings prior to the hearing on the motion for reconsideration shall constitute grounds for the reversal of any such findings, judgment, order, or decree by the appellate court.

6. Hawai'i Family Court Rules (HFCR) Rule 59 (Supp.2005) states in part:

> **NEW TRIALS; RECONSIDERATION OR AMENDMENT OF JUDGMENTS AND ORDERS.**
>
> . . . .
>
> **(e) Motion to reconsider, alter or amend a judgment or order.** Except as otherwise provided by HRS section 571–54, a motion to reconsider, alter or amend the judgment or order shall be filed not later than 10 days after entry of the judgment or order. Excepting motions for reconsideration from proceedings based upon HRS sections 571–11(1), (2), (6) and (9), all motions for reconsideration shall be non-hearing motions. At its discretion, the court may set the matter for a hearing. Responsive pleadings to a motion for reconsideration shall be filed no later than 10 days after filing of the motion to reconsider, alter or amend the judgment or order.

7. HFCR Rule 11 (2006) states:

> **SIGNING OF PLEADINGS, MOTIONS, AND OTHER PAPERS; SANCTIONS.**
>
> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. A party who is not represented by an attorney shall sign the party's pleading,

ings, motions, and other papers, and sanctions. HFCR Rule 68 [8] pertains to offers of settlement.

■ HRS § 607–14.5 (Supp.2005) applies in civil actions, not family court actions. It states:

**Attorneys' fees and costs in civil actions.** (a) In any civil action in this State where a party seeks money damages or injunctive relief, or both, against another party, and the case is subsequently decided, the court may, as it deems just, assess against either party, whether or not the party was a prevailing party, and enter as part of its order, for which execution may issue, a reasonable sum for attorneys' fees and costs, in an amount to be determined by the court upon a specific finding that all or a portion of the party's claim or defense was frivolous as provided in subsection (b).

(b) In determining the award of attorneys' fees and costs and the amounts to be awarded, the court must find in writing that all or a portion of the claims or defenses made by the party are frivolous and

are not reasonably supported by the facts and the law in the civil action. In determining whether claims or defenses are frivolous, the court may consider whether the party alleging that the claims or defenses are frivolous had submitted to the party asserting the claims or defenses a request for their withdrawal as provided in subsection (c). If the court determines that only a portion of the claims or defenses made by the party are frivolous, the court shall determine a reasonable sum for attorneys' fees and costs in relation to the frivolous claims or defenses.

(c) A party alleging that claims or defenses are frivolous may submit to the party asserting the claims or defenses a request for withdrawal of the frivolous claims or defenses, in writing, identifying those claims or defenses and the reasons they are believed to be frivolous. If the party withdraws the frivolous claims or defenses within a reasonable length of time, the court shall not award attorneys'

---

motion, or other paper and state the party's address. The name of the person signing the document shall be typed or hand-printed in block letters directly below the signature. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The rule in equity that the averments of an answer under oath must be overcome by the testimony of two witnesses or of one witness sustained by corroborating circumstances is abolished. The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief former [sic] after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the

filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

8. HFCR Rule 68 (2006) states:

**OFFER OF SETTLEMENT.**
At any time more than 20 days before any contested hearing held pursuant to HRS sections 571–11 to 14 (excluding law violations and criminal matters) is scheduled to begin, any party may serve upon the adverse party an offer to allow a judgment to be entered to the effect specified in the offer. Such offer may be made as to all or some of the issues, such as custody and visitation. Such offer shall not be filed with the court, unless it is accepted. If within 10 days after service of the offer the adverse party serves written notice that the offer is accepted, any party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the court shall treat those issues as uncontested. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible, except in a proceeding to determine costs and attorney's fees. If the judgment in its entirety finally obtained by the offeree is patently no more favorable than the offer, the offeree must pay the costs, including reasonable attorney's fees incurred after the making of the offer, unless the court shall specifically determine that such would be inequitable in accordance with the provisions of HRS section 580–47 or other applicable statutes, as amended.

fees and costs based on those claims or defenses under this section.

Neither HRS § 607–14.5 nor any other similar statute applies to the family court.

HRS §§ 587–21, –22 and –24 (1993 and Supp.2005), HRS §§ 587–62 and –63 (1993) and HRS §§ 587–71, –72 and –73 (Supp.2005) in relevant part, describe the process of Child Protective Act cases in Hawai'i:

§ 587–21 Investigation. (a) Upon receiving a report that a child is subject to imminent harm, has been harmed, or is subject to threatened harm, the [DHS] shall cause such investigation to be made as it deems to be appropriate. . . .

(b) Upon satisfying itself as to the course of action that should be pursued to best accord with the purpose of this chapter, the [DHS] shall:

. . . .

(3) Assume temporary foster custody of the child pursuant to section 587–24(a) and file a petition with the court under this chapter within three working days, excluding Saturdays, Sundays, and holidays, after the date of the [DHS]'s assumption of temporary foster custody of the child[.]

§ 587–22 Protective custody by police officer without court order. (a) A police officer shall assume protective custody of the child without a court order and without the consent of the child's family regardless of whether the child's family is absent, if in the discretion of the police officer, the child is in such circumstance or condition that the child's continuing in the custody or care of the child's family presents a situation of imminent harm to the child.

A police officer may assume protective custody of the child without a court order and without the consent of the child's family regardless of whether the child's family is absent, if in the discretion of the police officer:

(1) The child has no legal custodian who is willing and able to provide a safe family home for the child; or

(2) There is evidence that the parent or legal guardian of the child has subjected the child to harm or threatened

harm and that the parent or legal guardian is likely to flee the jurisdiction of the court with the child.

(b) A police officer who assumes protective custody of a child immediately shall complete transfer of protective custody to the [DHS] by presenting physical custody of the child to the [DHS], unless the child is or presently will be admitted to a hospital or similar institution, in which case the police officer immediately shall complete transfer of protective custody to the [DHS] by so informing the [DHS] and receiving an acknowledgment from the hospital or similar institution that it has been informed that the child is under the temporary foster custody of the [DHS].

(c) Upon the completion of the transfer of protective custody of a child by a police officer to the [DHS], the [DHS] shall automatically assume temporary foster custody of the child.

§ 587–24 Temporary foster custody without court order. (a) When the [DHS] receives physical custody of a child from the police pursuant to section 587–22(b), the [DHS] shall assume temporary foster custody of a child without an order of the court and without the consent of the child's family regardless of whether the child's family is absent, if in the discretion of the [DHS] the child is in such circumstance or condition that the child's continuing in the custody or care of the child's family presents a situation of imminent harm to the child.

(b) Upon assuming temporary foster custody of a child under this chapter, the [DHS] promptly shall make every reasonable effort to inform a legal custodian of the child of the actions taken concerning the child; provided that the [DHS] may withhold such information from the child's family concerning the child as, in its discretion, is deemed to be in the best interests of the child.

(c) Upon assuming temporary foster custody of a child under this chapter, the [DHS] shall place the child in emergency foster care, unless the child is admitted to a hospital or similar institution, while it conducts an appropriate investigation.

**486**

. . . .

(e) Within three working days, excluding Saturdays, Sundays, or holidays, after the date of its assumption of temporary foster custody, the [DHS] shall:

(1) Relinquish its temporary foster custody and return the child to the child's legal custodian and proceed pursuant to section 587–21(b)(1), (2), or (4);

(2) Continue its assumption of temporary foster custody of the child with the child being voluntarily placed in foster care by the child's legal custodian and proceed pursuant to section 587–21(b)(2) or (4); or

(3) Continue its assumption of temporary foster custody of the child and proceed pursuant to section 587–21(b)(3).

§ 587–62 **Return date.** (a) When a petition has been filed, the court shall set a return date to be held within fifteen days of (1) the filing of the petition or (2) the date a decision is orally stated by the court on the record in a temporary foster custody hearing.

(b) On the return date, the court shall preside over a pretrial conference and may order that:

(1) During the period of time from the return date to the date of the adjudication hearing, the parties participate in and cooperate with appropriate services, actions, and recommendations pursuant to section 587–53(d);

(2) Such further investigation and information as the court deems to be relevant to the issues to be determined at the adjudication hearing be conducted and be available for the court's consideration at the adjudication hearing;

(3) If the parties stipulate to orders of adjudication and foster custody or family supervision, the case be set for a further disposition hearing concerning an appropriate service plan, unless an appropriate written service plan is available and included as part of the stipulated orders; or

(4) If the parties do not stipulate to orders of adjudication and foster custody or family supervision, the case be set for an adjudication hearing or, if adjudication is stipulated to, a disposition hearing as soon as is practicable; provided that if the child is to remain in foster care subsequent to the return date, the court shall set the case for an adjudication hearing or a disposition hearing within ten working days of the return date, unless the court deems a later date for the hearing to be in the best interests of the child or the later date is agreed to by all parties and is approved by the court.

§ 587–63 **Adjudication hearing; interim orders.** (a) The court shall consider the evidence which is relevant to the adjudication; provided that the court shall consider fully all relevant prior and current information pertaining to the safe family home guidelines, as set forth in section 587–25 and the report or reports submitted pursuant to section 587–40, in rendering a determination concerning adjudication.

(b) If facts sufficient to sustain the petition under this chapter are:

(1) Established in accordance with this chapter, the court shall enter an order sustaining the petition and a finding that the child is a child whose physical or psychological health or welfare has been harmed or is subject to threatened harm by the acts or omissions of the child's family; provided that if the parties consent, the facts for the finding may be based upon the report or reports submitted pursuant to section 587–40 or other stipulated evidence deemed by the court to constitute an adequate basis for sustaining the petition, which report or reports or stipulated evidence may be admitted into evidence subject to reservation by the parties of their right to cross-examination subject to section 587–40(c), or

(2) Not established, the court shall enter an order dismissing the petition and shall state the grounds for dismissal.

(c) If the court sustains the petition and does not commence immediately the disposition hearing, it shall:

(1) Determine, based upon the facts adduced during the adjudication hearing and any other additional facts presented to it, whether a temporary foster custody order should be continued or should be entered pending an order of disposition. The court shall consider all relevant prior and current information pertaining to the safe family home guidelines, as set forth in section 587–25 and the report or reports submitted pursuant to section 587–40, and proceed pursuant to section 587–53(f) or (g) prior to rendering a determination; and

(2) Enter such orders regarding visitation and the provision of services to the child and the child's family and the child's and family's acceptance and cooperation with such services as the court deems to be appropriate and consistent with the best interests of the child.

**§ 587–71 Disposition hearing.** (a) The court may consider the evidence which is relevant to disposition which is in the best interests of the child; provided that the court shall determine initially whether the child's family home is a safe family home. The court shall consider fully all relevant prior and current information pertaining to the safe family home guidelines, as set forth in section 587–25 and the report or reports submitted pursuant to section 587–40, in rendering such a determination.

(b) If the court determines that the child's family is presently willing and able to provide the child with a safe family home without the assistance of a service plan, the court shall terminate jurisdiction.

(c) If the court determines that the child's family home is a safe family home with the assistance of a service plan, the court shall place the child and the child's family members who are parties under the family supervision of an authorized agency, return the child to the child's family home, and enter further orders, including but not limited to restrictions upon the rights and duties of the authorized agency, as the court deems to be in the best interests of the child.

(d) If the court determines that the child's family home is not a safe family home, even with the assistance of a service plan, the court shall vest foster custody of the child in an authorized agency and enter such further orders as the court deems to be in the best interests of the child.

(e) If the child's family home is determined not to be safe, even with the assistance of a service plan pursuant to subsection (d), the court may, and if the child has been residing without the family home for a period of twelve consecutive months shall, set the case for a show cause hearing as deemed appropriate by the court at which the child's family shall have the burden of presenting evidence to the court regarding such reasons and considerations as the family has to offer as to why the case should not be set for a permanent plan hearing. Upon such show cause hearing as the court deems to be appropriate, the court shall consider the criteria set forth in section 587–73(a)(1), (2), and (4), and:

(1) Set the case for a permanent plan hearing and order that the authorized agency submit a report pursuant to section 587–40; or

(2) Proceed pursuant to this section.

(f) Except as provided in subsection (e)(1), if the court does not terminate the court's jurisdiction, the court shall order in every case that the authorized agency make every reasonable effort, pursuant to section 587–40, to prepare a written service plan, as set forth in section 587–26.

(g) The court may continue the disposition hearing concerning the terms and conditions of the proposed service plan to a date within forty-five days from the date of the original disposition hearing, unless the court deems a later date to be in the best interests of the child; provided that if the court is convinced that a party has signed and fully understands and accepts the service plan, the court may order that the service plan shall constitute the service plan by court order concerning such party and that the service plan be entered into evidence with such party's presence being

waived for good cause shown at the continued disposition hearing.

(h) Prior to ordering a service plan at the disposition or continued disposition hearing, the court shall make a finding that each term, condition, and consequence of the service plan has been thoroughly explained to and is understood by each party or a party's guardian ad litem; provided that the court need not enter the findings if the court finds that aggravated circumstances are present.

(i) After a hearing that the court deems to be appropriate, the court may order terms, conditions, and consequences to constitute a service plan as the court deems to be in the best interests of the child; provided that a copy of the service plan shall be incorporated as part of the order. The court need not order a service plan if the court finds that aggravated circumstances are present.

(j) If the court makes a determination that aggravated circumstances are present under this section, the court shall set the case for a show cause hearing as deemed appropriate by the court within thirty days. At the show cause hearing, the child's family shall have the burden of presenting evidence to the court regarding the reasons and considerations as to why the case should not be set for a permanent plan hearing.

(k) The court may order that any party participate in, complete, be liable for, and make every good faith effort to arrange payment for such services or treatment as are authorized by law and are deemed to be in the best interests of the child.

(l) At any stage of the child protective proceedings, the court may order that a child be examined by a physician, surgeon, psychiatrist, or psychologist, and it may order treatment by any of them of a child as is deemed to be in the best interests of the child. For either the examination or treatment, the court may place the child in a hospital or other suitable facility.

(m) The court shall order reasonable supervised or unsupervised visitation rights to the child's family and to any person interested in the welfare of the child and that the visitation shall be in the discretion of an authorized agency and the child's guardian ad litem, unless it is shown that rights of visitation may be detrimental to the best interests of the child; provided that the court need not order any visitation if the court finds that aggravated circumstances are present.

(n) Each of the natural parents shall be ordered to complete the medical information forms and consent to release medical information required under section 578-14.5 and shall return the completed forms to the [DHS].

(o) In any case that a permanent plan hearing is not deemed to be appropriate, the court shall:

(1) Make a finding that each party understands that unless the family is willing and able to provide the child with a safe family home, even with the assistance of a service plan, within the reasonable period of time specified in the service plan, their respective parental and custodial duties and rights shall be subject to termination; and

(2) Set the case for a review hearing within six months.

(p) Nothing in this section shall prevent the court from setting a show cause hearing or a permanent plan hearing at any time the court determines such a hearing to be appropriate.

§ 587–72 **Review hearings.** (a) Except for good cause shown, the court shall set each case for review hearing not later than six months after the date that a service plan is ordered by the court and, thereafter, the court shall set subsequent review hearings at intervals of no longer than six months until the court's jurisdiction has been terminated or the court has ordered a permanent plan and has set the case for a permanent plan review hearing; the court may set a case for a review hearing upon the motion of a party at any time if the hearing is deemed by the court to be in the best interests of the child.

. . . .

(c) Upon each review hearing the court shall consider fully all relevant prior and

current information pertaining to the safe family home guidelines, as set forth in section 587–25, including but not limited to the report submitted pursuant to section 587–40, and:

(1) Determine whether the child's family is presently willing and able to provide the child with a safe family home without the assistance of a service plan and, if so, the court shall terminate jurisdiction;

(2) Determine whether the child's family is presently willing and able to provide the child with a safe family home with the assistance of a service plan and, if so, the court shall return the child or continue the placement of the child in the child's family home under the family supervision of the appropriate authorized agency;

(3) If the child's family home is determined, pursuant to subsection (c)(2) not to be safe, even with the assistance of a service plan, order that the child remain or be placed under the foster custody of the appropriate authorized agency;

(4) Determine whether the parties have complied with, performed, and completed every term and condition of the service plan that was previously court ordered;

(5) Order revisions to the existing service plan, after satisfying section 587–71(h), as the court, upon a hearing that the court deems to be appropriate, determines to be in the best interests of the child; provided that a copy of the revised service plan shall be incorporated as part of the order;

(6) Enter further orders as the court deems to be in the best interests of the child;

(7) Determine whether aggravated circumstances are present and, if so, the court shall set the case for a show cause hearing as the court deems appropriate within thirty days. At the show cause hearing, the child's family shall have the burden of presenting evidence to the court regarding the reasons and considerations as to why

the case should not be set for a permanent plan hearing; and

(8) If the child has been residing outside the family home for twelve consecutive months from the initial date of entry into out-of-home care, set the case for a show cause hearing as deemed appropriate by the court. At the show cause hearing, the child's family shall have the burden of presenting evidence to the court regarding the reasons and considerations as to why the case should not be set for a permanent plan hearing.

(d) In any case that a permanent plan hearing is not deemed to be appropriate, the court shall:

(1) Make a finding that the parties understand that unless the family is willing and able to provide the child with a safe family home, even with the assistance of a service plan, within the reasonable period of time specified in the service plan, their respective parental and custodial duties and rights shall be subject to termination; and

(2) Set the case for a review hearing within six months.

(e) If the child has been residing outside of the family home for an aggregate of fifteen out of the most recent twenty-two months from the initial date of entry into out-of-home care, the [DHS] shall file a motion to set the matter for a permanent plan hearing unless:

(1) The [DHS] has documented in the safe family home guidelines prepared pursuant to section 587–25(a), a compelling reason why it would not be in the best interests of the child to file a motion; or

(2) The State has not provided to the family of the child, consistent with the time period in the service plan, such services as the [DHS] deems necessary for the safe return of the child to the family home;

provided that nothing in this section shall prevent the [DHS] from filing such a motion to set a permanent plan hearing if the

[DHS] has determined that the criteria in section 587–73(a) are present.

§ 587–73 **Permanent plan hearing.** (a) At the permanent plan hearing, the court shall consider fully all relevant prior and current information pertaining to the safe family home guidelines, as set forth in section 587–25, including but not limited to the report or reports submitted pursuant to section 587–40, and determine whether there exists clear and convincing evidence that:

(1) The child's legal mother, legal father, adjudicated, presumed, or concerned natural father as defined under chapter 578 are not presently willing and able to provide the child with a safe family home, even with the assistance of a service plan;

(2) It is not reasonably foreseeable that the child's legal mother, legal father, adjudicated, presumed, or concerned natural father as defined under chapter 578 will become willing and able to provide the child with a safe family home, even with the assistance of a service plan, within a reasonable period of time which shall not exceed two years from the date upon which the child was first placed under foster custody by the court;

(3) The proposed permanent plan will assist in achieving the goal which is in the best interests of the child; provided that the court shall presume that:

(A) It is in the best interests of a child to be promptly and permanently placed with responsible and competent substitute parents and families in safe and secure homes; and

(B) The presumption increases in importance proportionate to the youth of the child upon the date that the child was first placed under foster custody by the court; and

(4) If the child has reached the age of fourteen, the child consents to the permanent plan, unless the court, after consulting with the child in camera, finds that it is in the best interest of the child to dispense with the child's consent.

(b) If the court determines that the criteria set forth in subsection (a) are established by clear and convincing evidence, the court shall order:

(1) That the existing service plan be terminated and that the prior award of foster custody be revoked;

(2) That permanent custody be awarded to an appropriate authorized agency;

(3) That an appropriate permanent plan be implemented concerning the child whereby the child will:

(A) Be adopted pursuant to chapter 578; provided that the court shall presume that it is in the best interests of the child to be adopted, unless the child is or will be in the home of family or a person who has become as family and who for good cause is unwilling or unable to adopt the child but is committed to and is capable of being the child's guardian or permanent custodian;

(B) Be placed under guardianship pursuant to chapter 560; or

(C) Remain in permanent custody until the child is subsequently adopted, placed under a guardianship, or reaches the age of majority, and that such status shall not be subject to modification or revocation except upon a showing of extraordinary circumstances to the court;

(4) That such further orders as the court deems to be in the best interests of the child, including, but not limited to, restricting or excluding unnecessary parties from participating in adoption or other subsequent proceedings, be entered; and

(5) Until adoption or guardianship is ordered, that each case be set for a permanent plan review hearing not later than one year after the date that a permanent plan is ordered by the court, or sooner if required by federal law, and thereafter, that subsequent permanent plan review hearings be set not later than each year, or sooner if required by federal law; provided that at each permanent plan review

hearing, the court shall review the existing permanent plan and enter such further orders as are deemed to be in the best interests of the child.

(c) If the court determines that the criteria set forth in subsection (a) are not established by clear and convincing evidence, the court shall order that:

(1) The permanent plan hearing be continued for a reasonable period of time not to exceed six months from the date of the continuance or the case be set for a review hearing within six months;

(2) The existing service plan be revised as the court, upon such hearing as the court deems to be appropriate and after ensuring that the requirement of section 587–71(h) is satisfied, determines to be in the best interests of the child; provided that a copy of the revised service plan shall be incorporated as part of the order;

(3) The authorized agency submit a written report pursuant to section 587–40; and

(4) Such further orders as the court deems to be in the best interests of the child be entered.

(d) At the continued permanent plan hearing, the court shall proceed pursuant to subsections (a), (b), and (c) until such date as the court determines that:

(1) There is sufficient evidence to proceed pursuant to subsection (b); or

(2) The child's family is willing and able to provide the child with a safe family home, even with the assistance of a service plan, upon which determination the court may:

(A) Revoke the prior award of foster custody to the authorized agency and return the child to the family home;

(B) Terminate jurisdiction;

(C) Award family supervision to an authorized agency;

(D) Order such revisions to the existing service plan as the court, upon such hearing as the court deems to be appropriate and after ensuring that the requirement of section 587–71(h)

is satisfied, determines to be in the best interests of the child; provided that a copy of the revised service plan shall be incorporated as part of the order;

(E) Set the case for a review hearing within six months; and

(F) Enter such further orders as the court deems to be in the best interests of the child.

HRS § 587–62(b)(3) specifies what the court should do "[i]f the parties stipulate to orders of adjudication and foster custody or family supervision[.]" HRS § 587–62(b)(4) specifies what the court should do "[i]f the parties do not stipulate to orders of adjudication and foster custody or family supervision[.]" HRS § 587–63(a) specifies that, at the adjudication/jurisdiction hearing, "the court shall consider fully all relevant prior and current information pertaining to the safe family home guidelines[.]" HRS § 587–63(c) specifies that the adjudication/jurisdiction hearing may be separate from the disposition/placement hearing. HRS § 587–71(a) specifies that in a disposition/placement hearing, and HRS § 587–72(c) specifies that upon each review hearing, "[t]he court shall consider fully all relevant prior and current information pertaining to the safe family home guidelines, as set forth in section 587–25" and the report or reports submitted pursuant to section 587–40. HRS § 587–71(e) specifies what shall be done "if the child has been residing without the family home for a period of twelve consecutive months[.]" HRS § 587–72(c)(8) specifies what shall be done "[i]f the child has been residing outside the family home for twelve consecutive months from the initial date of entry into out-of-home care[.]" HRS § 587–72(e) specifies what shall be done "[i]f the child has been residing outside of the family home for an aggregate of fifteen out of the most recent twenty-two months from the initial date of entry into out-of-home care[.]" HRS § 587–73(a) specifies that, in a "permanent plan hearing, the court shall consider fully all relevant prior and current information pertaining to the safe family home guidelines, as set forth in section 587–25, including but not limited to the report or reports submitted

pursuant to section 587–40[.]" HRS § 587–73(a)(2) specifies what shall be done when "[i]t is not reasonably foreseeable that the child's legal mother ... will become willing and able to provide the child with a safe family home, even with the assistance of a service plan, within a reasonable period of time which shall not exceed two years from the date upon which the child was first placed under foster custody by the court[.]"

In a Child Protective Act case initiated by DHS against a mother and father, where the father, but not the mother, stipulates to the family court's jurisdiction to enter an order of adjudication, and the court presides over a hearing to determine the family court's jurisdiction to enter an order of adjudication against the mother, can there be any circumstances where the court (1) is authorized to decide that the mother's refusal to stipulate to the family court's jurisdiction to enter an order of adjudication was done vexatiously, frivolously, and in bad faith and, on the basis of that decision, (2) has inherent power to order the mother to pay the attorney fees and costs incurred by the father at the court's adjudication/jurisdiction hearing? The answer to both questions is no.

Family court proceedings under HRS Chapter 587 have three possible major steps but only one court record. Those three steps are (1) the adjudication/jurisdiction hearing/trial, (2) the disposition hearing/trial, and (3) the permanent plan hearing/trial. Step (3) may result in the termination of parental rights. Each succeeding step includes the record from the prior step. The time clock begins running when the child commences residing outside the family home. According to HRS § 587–73(a)(2), the "shall not exceed two years" time period commences running "from the date upon which the child was first placed under foster custody by the court[.]" A parent who does not want DHS to get to, or to prevail at, step (3) should be very careful about steps (1) and (2). The mother has a right to require DHS to go through each step, including step (1). The family court may not, neither sua sponte nor on request, order the mother who required DHS to go through step (1) to pay any of the attorney fees or costs incurred by the father

who decided not to require DHS to go through step (1), but who decided to have his counsel present while DHS went through step (1) for the mother, and who incurred those costs and fees at that time.

## CONCLUSION

Accordingly, we reverse the August 16, 2005 Order Awarding Attorney's Fees and Costs and the October 3, 2005 Order Awarding Attorney's Fees and Costs that ordered Mother to pay counsel for Father.